Paul L. Hoffman, State Bar No. 71244
John C. Washington, State Bar No. 315991
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP
200 Pier Avenue Ste. 226
Hermosa Beach, CA 90254
(310) 717-7373

Attorneys for Plaintiff
Mario Carrasco

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MARIO CARRASCO, an individual,

    Plaintiff,

vs.

CITY OF GLENDORA, GLENDORA
POLICE DEPARTMENT, MATT
EGAN, in his official capacity as
Glendora Chief of Police, CHRIS
STABIO, in his official capacity as
Lieutenant of the Glendora Police
Department AND DOES 1-10,

    Defendants

Case No.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE AND DECLARATORY
RELIEF

# **INTRODUCTION**

1.      This civil rights action arises out of Defendants' unjustified and unconstitutional September 17, 2020, police stop of Plaintiff Mario Carrasco at gunpoint.

2.      Mr. Carrasco was leaving a public park in Glendora where he was admiring the mountains when a Glendora Police Department ("GPD") officer pulled him over for no reason and immediately leapt out of his squad car, screaming at Mr. Carrasco. Two additional GPD officers arrived at the scene shortly thereafter and rapidly emerged from their squad cars with guns drawn. Mr. Carrasco was stunned, terrified, and confused by these actions because he broke no law and was minding his business in his hometown. Mr. Carrasco's white 1997 Dodge Ram cargo van was registered, insured, and in perfect working order. Even though he knew he had done nothing wrong and feared for his life, Mr. Carrasco complied with all the officers' demands.

3.      During the ordeal, the GPD officers ordered Mr. Carrasco to exit the van with his hands up. They demanded he turn around and face away from them. While two of the officers pointed their guns at his back, they forced Mr. Carrasco – a senior citizen – to walk backwards up a hill. Mr. Carrasco was terrified that he would be shot if he moved the wrong way, especially considering the way the GPD officers were behaving.

4.     Mr. Carrasco is a proud naturalized United States citizen who has lived in Glendora for over thirty years. He frequently visits this same public park to walk and marvel at the San Gabriel Mountains.

5.      After immigrating to the United States from Ecuador in 1975, he became a citizen, started a family, ran a successful commercial electrical business, and settled down in a quiet Glendora neighborhood. His daughter is a lawyer. His son is a veteran. He is now a semi-retired, happy grandfather. That morning, he was wearing the same yellow t-shirt he had worn to his granddaughter's Minions-themed birthday party.

6.     Defendants' actions caused Mr. Carrasco extreme emotional distress and continue to make him feel like an unwanted stranger in his own community. He brings this case to stop the GPD from racially profiling him or any other person in Glendora.

## JURISDICTION AND VENUE

7.     This case arises under the Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.  Plaintiff timely

filed a Government Tort Claim on or about March 11, 2021.  To date the City of Glendora has not responded to this claim.

8.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to these claims occurred in this District.

## **PARTIES**

9.     Plaintiff Mario Carrasco brings this action individually.  Mr. Carrasco was born in Ambato, Ecuador and is a naturalized citizen of the United States. Mr. Carrasco has been a resident of Glendora, California for over thirty years.

10.     Defendant City of Glendora ("City") is a political subdivision of the State of California. Defendant GPD is an independent entity subject to suit. City is sued under § 1983 because City's policies and customs caused Plaintiff's injuries and under the doctrine of respondent superior for Plaintiff's state claims.

11.     Matt Egan is the Glendora Chief of Police and is sued in his official capacity as the relevant policy maker.

12.     Defendant Chris Stabio is a Lieutenant of the Glendora Police Department and is sued in his official capacity as the relevant supervisory employee.

13.     The identities and capacities of defendants Does 1 through 10 are presently unknown to Plaintiff, and on this basis, Plaintiff sues these defendants by fictitious names. These Does include the three officers discussed in paragraph 2

3

above. Plaintiff will amend the Complaint to substitute the true names and capacities of the Doe defendants when ascertained. Plaintiff is informed, believes, and thereon alleges that Does 1 through 10 were at all times relevant herein, employees and/or agents of the Defendant City and were involved in some manner with the violations of Mr. Carrasco's rights. Defendants Does 1 through 10 are sued in both their official and individual capacities.

14.     Each individual defendant and each Doe defendant acted under color of state law at all times relevant to the allegations herein, and within the scope of his or her agency and employment with the Defendant City and the GPD.

15.     In committing the acts this complaint alleges, the individual defendants acted wantonly, knowingly, maliciously, and with reckless or callous disregard for Plaintiff's constitutional and other rights, justifying an award of punitive damages against each individual Doe Defendant.

## FACTS

16.     On September 17, 2020, at approximately 10:30 A.M., Mr. Carrasco drove to Carlyle Linder Equestrian Park located in Glendora. Mr. Carrasco drives a white 1997 Dodge Ram cargo van. He had paid for the car in full, and it was registered under his name. There were current registration tags on the Arizona license plates, which were the plates that belonged to the vehicle.

17.     After parking his van at the center of the park, Mr. Carrasco exited his vehicle and began to walk around the park, as he often does, to look at the San Gabriel Mountains. During his walk, he noticed a marked GPD squad car driving slowly nearby within the park grounds.

18.     As Mr. Carrasco continued his walk, he saw the squad car made a quick, speedy circle before heading south toward the wash, away from Mr. Carrasco and towards a dead end. Because Mr. Carrasco had done nothing wrong, he was not concerned about the GPD squad car's presence or its erratic driving.

19.     At or around 11 A.M., Mr. Carrasco concluded his visit and drove to the park exit at the intersection of Glendora Mountain Road and Boulder Springs Drive. As he waited at the intersection traffic light, he noticed the same GPD squad car pull up behind him. Moments later, the squad car activated its lights to pull him over.

20.     Though he knew that he had done nothing wrong and that there were no issues with his van that would justify a police stop, Mr. Carrasco complied with the officer's order as soon as it was safe to do so, pulling over onto the southbound side of Glendora Mountain Road. At this point and through the rest of the interaction, there were no other people in the vicinity.

21.     As soon as the squad car parked behind Mr. Carrasco, a tall, white, male officer ("Doe 1") exited and began screaming commands at him. At

5

approximately the same time, two additional marked GPD squad cars arrived, with one parking near the first squad car and the other parking approximately 25 feet away from Mr. Carrasco's van. One officer emerged from each car ("Doe 2" and "Doe 3"), and both drew their guns and pointed them directly at Mr. Carrasco. Both appeared to be young, white, and male.

22.    Mr. Carrasco was shocked that the officers never asked for his driver's license, vehicle registration, or proof of insurance, nor did they ask any other questions that would have immediately defused the situation. Instead, the immediate escalation to the threat of deadly force caused Mr. Carrasco to fear for his life.

23.    Officer Doe 1 screamed at Mr. Carrasco to put his hands out of the window, which he did. The officers ordered Mr. Carrasco to get out of his van, which he did slowly and deliberately, not wanting to make any movements that could be misconstrued as dangerous.

24.    The officers, still pointing their guns directly at Mr. Carrasco, ordered him to turn and face away from them. He complied, keeping his hands straight up in the air, still fearing for his life. Shortly after, the first officer screamed, "Do you understand English?" He told them that he did, even though he had complied with all of their commands in English up to that point.

25.     Officer Doe 1 paused before ordering Mr. Carrasco to step back. Following instructions precisely because he still feared for his life, he took one step back. One of the other officers then barked "'Continue walking backwards towards us!'"

26.     Mr. Carrasco, slowly and deliberately, walked backwards up Glendora Mountain Road. Two or three times, the officers shouted, "Don't look back!" Mr. Carrasco was terrified of giving the officers any reason to shoot him. After approximately twenty-five steps, Mr. Carrasco realized that he had made his way in between two of the squad cars.

27.     As he approached the doors of the squad cars, one of the Doe officers grabbed hold of Mr. Carrasco's arms with enough force to hurt him. Despite all of this, Mr. Carrasco maintained his composure and obeyed the officers' commands at all times.

28.     The Doe officer ordered Mr. Carrasco to position his hands as if he were praying, and then pushed him forcefully against the patrol car. Mr. Carrasco did not resist. The officer, who was larger than Mr. Carrasco, used his body weight to restrain Mr. Carrasco against the patrol car.

29.     As Mr. Carrasco was restrained, one of the other officers asked if he was carrying any weapons. Mr. Carrasco responded no. The officer asked if Mr.

Carrasco had knives or other sharp objects on his person. Mr. Carrasco again answered no. Throughout, Mr. Carrasco maintained a calm and reasoned tone.

30.     Mr. Carrasco was standing in with his legs partially spread because of the weight of the larger officer. At this point, the officer began to search Mr. Carrasco's entire body. The officer firmly searched Mr. Carrasco's legs, torso, and private area. Mr. Carrasco was terrified and felt violated.

31.     Throughout the search, the other two officers kept their weapons trained directly at Mr. Carrasco's head. This is despite the fact that Mr. Carrasco had never resisted or given any other indication of noncompliance. Even up to this point, Mr. Carrasco was never told why he was being detained.

32.     When the search was over, the searching officer demanded that Mr. Carrasco wait in the back of one of the squad cars. Mr. Carrasco calmly explained that he is claustrophobic and requested to wait on the curb. One officer yelled, "No!" while the other screamed, "You have no option! Get in there now!" Because the officers were so insistent and continued pointing their guns directly at him, Plaintiff sat in the back of the squad car.

33.     Mr. Carrasco is unsure exactly how much time had transpired until this point. It felt like he had been detained for approximately thirty minutes but it may have been less than that. From the inside of the patrol car, Mr. Carrasco watched as Officers Doe 2 and Doe 3 turned their guns towards his 1997 Dodge

8

Ram cargo van. Officer Doe 1 asked if there was anyone else in the vehicle, and Mr. Carrasco told him that there was no one else.

34.     At this point, Mr. Carrasco watched Officers Doe 2 and Doe 3 yell some kind of tactical command that included the word "proceed," and then move towards the van with their weapons drawn, one on each side of the van.

35.     Officers Doe 2 and Doe 3 then conducted a search of Mr. Carrasco's van. He was never asked for his consent to a search of the van and he never gave consent. From his position in the back of the patrol car, he could not see where they were searching. As Officers Doe 2 and Doe 3 were searching the van, Officer Doe 1 would occasionally yell "Stay there!" at Mr. Carrasco through the window of the patrol car.

36.     As Mr. Carrasco waited in the back of the car for what felt like an interminable length of time, he heard the phrase "confirmation of a white van with Arizona license plates" coming through the radio of the vehicle. Though he was not privy to the rest of what was being communicated, he assumed that they were referring to his van, which is registered in the state of Arizona where he owns multiple rental and vacation properties.

37.     A few minutes later, Officer Doe 1 came towards the window of the patrol car where Mr. Carrasco was being held and quickly opened the door. Mr.

Carrasco, still terrified and unclear about the officer's intentions, did not move until the officer yelled, "You come out!"

38.     Mr. Carrasco was by this point physically and mentally exhausted by this ordeal and was still scared for his life.

39.     Mr. Carrasco stood in front of Officer Doe 1 awaiting further instructions. The officer yelled, "You may go!" More confused than ever, Mr. Carrasco remained still. The officer yelled louder, "You may go!" As Mr. Carrasco remained visibly confused, the officer finally offered a purported explanation. "The reason was stopped you was because your car matches the description of a stolen car."

40.     Mr. Carrasco, who remained silent because of his continuing fear for his life, could only wonder why none of the officers had ever asked if the van was his, confirmed if his name matched the vehicle registration, or asked for any explanation at all. After all, if the first officer had just asked for his identification, he would have learned that Mr. Carrasco was the lawful owner of the van and lived less than two miles away.

41.     Mr. Carrasco, still standing near the patrol car, looked the officer in the eye and wondered if he was telling the truth. The officer then barked, "Do you understand *why* we did that?" Mr. Carrasco wanted to say, "No, I do not understand." However, still thinking of his family and just trying to get out of the

encounter alive, Mr. Carrasco said in a hushed but respectful voice, "Okay, I am going back to work." Those were the last words exchanged between Mr. Carrasco and the officers.

42.     Mr. Carrasco drove the short distance back to his home. His pulse was elevated, and he felt traumatized and sick. Mr. Carrasco continues to suffer as a result of these events. Even now, recalling the incident, he feels physically sick and disturbed. He has lost sleep and he shakes when he remembers what it felt like to be threatened with deadly force. He feels great sorrow and anger at the injustice he suffered. He is afraid to live and go about his business in his own community.

43.     The officers never gave their names, and the circumstances did not allow Mr. Carrasco to ask for them. Mr. Carrasco was not given the officers' badge numbers, nor did he notice any identification on their uniforms. He was not offered a business card or any documentation of the incident. He never received an apology or any expression of remorse, even after it became clear that Mr. Carrasco was completely innocent.

44.     Even though Mr. Carrasco was 66 years old and at a relatively high risk of developing a severe illness from COVID-19, the officers did not allow the time for him to put on his face covering, did not wear face coverings themselves, yelled at him from inches away, and intruded on his personal space.

45.     This is not the first time Mr. Carrasco has been harassed by GPD officials due to his race. In 2016, a GPD officer pulled Mr. Carrasco over and wrongly accused him of being drunk. The officer also asked why Mr. Carrasco was in Glendora. After Mr. Carrasco stated that he lived in the area, the officer scoffed and asked him again, as if he didn't believe him. The officer only released Mr. Carrasco after he showed the officer his driver's license. On information and belief the GPD has a custom of racially profiling Hispanic individuals in the City.

## CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
### DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983
(Fourth and Fourteenth Amendment)

(Individual Defendants)

46.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

47.     The Doe defendants, while acting under color of law, deprived Mr. Carrasco of his civil rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches, seizures, excessive force, and detention and arrest not supported by reasonable suspicion or probable cause.  Defendants also engaged in excessive force by pointing their guns at Plaintiff throughout this encounter.

12

48.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the aforementioned defendants, Mr. Carrasco suffers and will continue to suffer great mental anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension as alleged above.

49.     Plaintiff is informed and believes and thereon alleges that the aforementioned acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare and safety of the Plaintiff, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial against the individual Defendants.

## SECOND CLAIM FOR RELIEF
## DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983
(Fourteenth Amendment)

(Individual Defendants)

50.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

51.     The Doe defendants, while acting under color of law, deprived Mr. Carrasco of his civil rights under the Fourteenth Amendments to due process and equal protection, by assuming that he, a Latino man, must be armed, dangerous,

13

and an unlawful resident of this country engaged in illegal activity and arresting him without any constitutional or reasonable basis.

52.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the aforementioned defendants, Mr. Carrasco suffers and will continue to suffer great mental anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension as alleged above.

53.     Plaintiff is informed and believes and thereon alleges that the aforementioned acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare and safety of the Plaintiff, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial against the individual Defendants.

**THIRD CLAIM FOR RELIEF**
**DEPRIVATION OF CIVIL RIGHTS – CALIFORNIA CIVIL**
**CODE §§ 51.7, 52**
(All Defendants)

54.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

55.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

14

56.     All defendants are subject to liability under California Civil Code sections 51.7 and 52, by assuming that he, a Latino man, must be armed, dangerous, and an unlawful resident of this country engaged in illegal activity and arresting him without any constitutional or reasonable basis.

57.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the aforementioned defendants, Mr. Carrasco suffers and will continue to suffer great mental pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, as alleged above.

58.     The above mentioned individually named and Doe defendants acted under color of law and both separately and in concert. The aforementioned acts of those defendants, and each of them, were willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference and with the intent to deprive Mr. Carrasco of his statutory and constitutional rights and privileges and did in fact violate the aforementioned rights and privileges.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA TOM BANE CIVIL RIGHTS ACT, CIVIL**
**CODE § 52.1**
(All Defendants)

59.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

15

60.     All defendants are subject to liability under California Civil Code section 52.1 because the individual and Doe defendants subjected Mr. Carrasco to violence and threats of violence, including the pointing of firearms, and interfered with Mr. Carrasco's constitutional rights by way of threats, intimidation or coercion.

61.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the aforementioned defendants, Mr. Carrasco suffers and will continue to suffer great mental pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, as alleged above.

62.     The above mentioned individually named and Doe defendants acted under color of law and both separately and in concert. The aforementioned acts of those defendants, and each of them, were willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference and with the intent to deprive Mr. Carrasco of his statutory and constitutional rights and privileges and did in fact violate the aforementioned rights and privileges.

### FIFTH CLAIM FOR RELIEF
### DEPRIVATION OF CIVIL RIGHTS -- 42 U.S.C. § 1983
(Fourth and Fourteenth Amendment – Municipal Liability)

63.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

64.    Mr. Carrasco is informed and believes and thereon alleges that, at all times herein mentioned, defendants City of Glendora, GPD, the relevant policy maker, Chief Matt Egan, and relevant supervisory employee, Lieutenant Chris Stabio, acted with deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Mr. Carrasco, including the right to be free from unreasonable searches and seizures, excessive force under the Fourth Amendment, and the right to procedural and substantive due process and equal protection under the Fourteenth Amendment, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following practices:

a.    Failing to adequately train, supervise, and control GPD officers in uses of force, including the pointing of firearms at people not reasonably suspected to be armed and dangerous;

b.    Failing to adequately train, supervise, and control GPD officers in making traffic stops based on probable cause by, among other things,

17

allowing the racial profiling of motorists by giving officers the discretion to check license plates for stolen vehicles in a racially discriminatory manner;

  c. Failing to adequately train, supervise, and control GPD officers in making traffic stops based on probable cause by, among other things, allowing them to carry out extreme felony stops based on their own racial biases;

  d. Failing to adequately train, supervise, and control GPD officers in proper communication and appropriate responses to members of the public by, among other things, allowing the use of tactics meant to intimidate and/or frighten, such as ordering a member of the public to walk backwards up a steep hill while multiple officers point their weapons at the individual's back;

  e. Failing to set up systems to prevent abuse by officers including the failure to properly track and investigate uses of force;

  f. Failing to discipline officers involved in abusing their authority; and

  g. Condoning and encouraging their officers in the belief that they can violate the rights of persons such as Mr. Carrasco with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

65.     The foregoing are intended to be illustrated and not exhaustive.

66.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the aforementioned defendants, Mr. Carrasco suffers and will continue to suffer great mental pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Mr. Carrasco to sustain damages as alleged above.

**SIXTH CLAIM FOR RELIEF**
**BATTERY**
**(Cal. Gov. Code § 820 and California Common Law)**
(All Defendants)

67.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

68.     The Doe defendants, while employed as by the GPD as police officers, and acting within the course and scope of their duties, grabbed Mr. Carrasco with force sufficient to bruise, pushed Mr. Carrasco into the side of a patrol car and restrained him using full body weight, and conducted a full body search. The Doe defendants also screamed at and breathed on Mr. Carrasco from close range without wearing a face covering or taking any other COVID-19 precautions, despite Mr. Carrasco's age. This conduct was both harmful and offensive.

69.     Mr. Carrasco suffered harm and was deeply offended by these touchings. Given the circumstances of the traffic stop, where Mr. Carrasco did not resist and was outnumbered by the Doe defendants and was physically smaller and older than each of the Doe defendants, this conduct would have been offensive to a reasonable person in Mr. Carrasco's position.

70.     Defendants City and GPD are vicariously liable for the wrongful acts of the Doe defendants, inclusive pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

## SEVENTH CLAIM FOR RELIEF
## ASSAULT
### (Cal. Gov. Code § 820 and California Common Law)
(All Defendants)

71.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

72.     The actions, omissions, customs, and policies of Defendants, as described above, were intentional and/or reckless, harmful, threatening and/or offensive, and a proximate cause of Mr. Carrasco's damages.

73.     As a direct and proximate result of the assault by Defendants, Mr. Carrasco sustained injuries and damages.

74.     The Doe defendants, while employed as police officers by GPD, and acting within the course and scope of their duties, threatened to touch Mr. Carrasco in a harmful manner. The threats continued well after it was clear that the threat of deadly force was unnecessary to induce compliance. Mr. Carrasco did not consent to this conduct.

75.     To Mr. Carrasco, it seemed that the Doe defendants were about to carry out their threat of deadly force. As alleged above, he feared that his life was in imminent danger.

76.     As alleged above, Mr. Carrasco suffered emotional and physical harm as the result of the threat of deadly force, and the Doe defendants' conduct was a substantial factor in causing this harm.

77.     City and GPD are vicariously liable for the wrongful acts of the Doe defendants, inclusive pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

21

# EIGHTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Cal. Gov. Code § 820 and California Common Law)
(All Defendants)

78. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

79. The actions, omissions, customs, and policies of Defendants, as described above, were intentional and/or reckless, extreme and outrageous, and a proximate cause of Mr. Carrasco's severe emotional distress.

80. As a direct and proximate result of the intentional infliction of emotional distress by Defendants, Mr. Carrasco sustained injuries as set forth in the paragraphs above.

81. These events caused Mr. Carrasco to suffer severe and disabling emotional distress. He has lost sleep and his peace of mind, he feels great sorrow and anger at the injustice he was forced to endure, and he shakes with fear when he recalls the events.

82. The Doe defendants acted intentionally in threatening Mr. Carrasco with deadly force, racially profiling him, conducting a full body search, and refusing to read him his rights or explain why he was being detained, conduct that was extreme and outrageous. If the Doe defendants did not intend this conduct to

cause emotional distress, then the Doe defendants were reckless in disregarding the possibility that such emotional distress would result.

83.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

84.     As a proximate result of Defendants' wrongful acts, Mr. Carrasco suffered damages, including severe emotional distress and anguish.

85.     City and GPD are vicariously liable for the wrongful acts of the Doe defendants, inclusive pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

### NINTH CLAIM FOR RELIEF
### FALSE IMPRISONMENT
**(Cal. Gov. Code § 820 and California Common Law)**
(All Defendants)

86.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

87.     Plaintiff was falsely imprisoned by the Doe defendants for no reason and without justification because of his race and immediately escalated to the threat of deadly force and detained Plaintiff.

88.     As a direct and proximate consequence of the acts of Defendants'
agents and employees, Plaintiffs have suffered and continue to suffer injury.

89.     City and GPD are vicariously liable for the wrongful acts of the Doe
defendants, inclusive pursuant to section 815.2(a) of the California Government
Code, which provides that a public entity is liable for the injuries caused by its
employees within the scope of the employment if the employee's act would subject
him or her to liability.

## TENTH CLAIM FOR RELIEF
### NEGLIGENCE
### (Cal. Gov. Code § 820 and California Common Law)
### (All Defendants)

90.     Plaintiff hereby incorporates by reference each of the allegations set
forth in the preceding paragraphs as if realleged fully herein.

91.     At all times, each Defendant owed Plaintiff the duty to act with due
care in the execution and enforcement of any right, law, or legal obligation.

92.     At all times, each Defendant owed Plaintiff the duty to act with
reasonable care.

93.These general duties of reasonable care and due care owed to Plaintiff
by all Defendants include but are not limited to the following specific obligations:

      a.     To refrain from using, or causing to be used, excessive
and/or unreasonable force against Plaintiff;

24

b.      To refrain from causing Plaintiff to be wrongfully

arrested and/or detained;

c.      To use generally accepted police procedures and tactics

that are reasonable and necessary under the circumstances;

d.      To refrain from abusing their authority granted them by

law;

e.      To refrain from violating Plaintiff's right guaranteed by

the United States and California Constitutions and by California

statutes, as set forth above, and as otherwise protected by law.

94.     Additionally, these general duties of reasonable and due care owed to

Plaintiff by Defendants City, GPD, Egan, and Stabio include but are not limited to

the following specific obligations:

a.      To institute and require proper and adequate training,

supervision, policies, and procedures concerning the use of vehicle

cameras that read license plates and associated computer systems for

identifying stolen vehicles, to prevent individuals from being

subjected to unconstitutional felony stops at gunpoint;

b.      To properly and adequately hire, investigate, train,

supervise, monitor, and discipline their employees, agents, and/or

GPD officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

      c.     To make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiff's;

      d.     To refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth in the paragraphs above.

95.    Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff. As a direct and proximate result of Defendants' negligence, Plaintiff sustained injuries and damages, and is entitled to relief as set forth above in the paragraphs above.

96.    The Doe defendants possessed a general duty to use due care to avoid an unreasonable risk of danger to others. Defendants' conduct represents a clear breach of this duty. Defendants' failure to question Plaintiff and their immediate escalation to the threat of deadly force represent a clear failure to satisfy the degree of care that Defendants could be reasonably expected to exercise under the circumstances.

97.    Defendants' actions were the actual and proximate causes of Plaintiff's injuries. Plaintiff suffered damages as a result of Defendants' breach of legal duty.

98.    City is vicariously liable for the wrongful acts of the Doe defendants, inclusive pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

## ELEVENTH CLAIM FOR RELIEF
## NEGLIGENT SUPERVISION, TRAINING, AND HIRING
(All Defendants)

99.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

100.   Plaintiff is informed and believes and thereon alleges that Defendants City, GPD, Egan, and Stabio owed a duty of care to Plaintiff in which they were required to use reasonable diligence to see that Plaintiffs were not harmed by defendants' acts or omissions.

101.   As alleged herein, Plaintiff is informed and alleges that Defendants City, GPD, Egan, and Stabio and unnamed administrators, supervisors, and trainers negligently hired, retained, supervised, trained, assigned, and failed to discipline employees, including Does 1-3, who were involved in and responsible for abusing their positions of authority as police officers in their cruel and miscalculated treatment of Plaintiff. Plaintiff alleges that Defendants' negligence was a direct and legal cause of Plaintiff's injuries.

102.   As a direct and legal result of the acts and omissions of Defendants, and each of them, Plaintiff has suffered damages, including, without limitation, loss of earnings and earnings of capacity, loss of enjoyment of life, pain and suffering, emotional distress, attorneys' fees, and costs of suit.

## **PRAYER**

WHEREFORE, Plaintiff requests relief as follows, and according to proof, against each defendant:

1. General and compensatory damages in an amount according to proof;

2. Special damages in an amount according to proof;

3. Exemplary and punitive damages against each Doe defendant, but not against City or GPD, in an amount according to proof;

4. Costs of suit and attorneys' fees, including under 42 U.S.C. § 1988; and California Code of Civil Procedure §§ 52(b)(3), 52.1(i);

5. Any and all available statutory fees, including under California Code of Civil Procedure 52(a); and

6. Such other relief as may be warranted or as is just and proper.


Dated: July 22, 2021


s/ Paul Hoffman
Paul Hoffman
Attorney for Plaintiff

28

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby respectfully demands that a trial by jury be conducted with respect to all issues presented herein.

Dated: July 22, 2021

<u>s/ Paul Hoffman</u>
Paul Hoffman
Attorney for Plaintiff

29